ORDERED.

Dated: June 29, 2011



Eileen W. Hollowell, Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

In re )
) Chapter 11
ORACLE INNKEEPER LLC, )
) No. 4:10-bk-10389-EWH
)
Debtor. ) **MEMORANDUM DECISION**
_____)

## I. INTRODUCTION

Pending before the Court is the debtor's request to have its Amended Plan of Reorganization confirmed and East West Bank's request for relief from the automatic stay. For the reasons explained in the balance of this decision, the Debtor's request will be denied and East West Bank's request will be granted.

## II. FACTUAL AND PROCEDURAL HISTORY

The Debtor owns and operates a student housing project, known as College Place located at 1601 North Oracle Road, Tucson, AZ 85706 (Property). The Property, approximately 1.5 miles from the University of Arizona, was previously a Hilton Hotel. The Property consists of seven buildings on seven acres of land, and contains 187 furnished student units. Eleven of the student units are one-bedroom units, while the

rest are studios. In addition to the student units, the Property contains nine hotel rooms, an on-site convenience store, café, restaurant and bar, and banquet facilities.

In 2007, the Debtor obtained a $10,000,000 loan, evidenced by a note (Oracle Note) from United Commercial Bank (UCB), secured by a first deed of trust on the Property (First DOT). The proceeds of the Oracle Note were used to renovate the Property and convert it from a hotel format into its current student housing format. In November 2009, UCB failed and was taken over by the FDIC. East West Bank (EWB) alleges that the FDIC transferred all of UCB's assets to EWB, and that EWB is now the holder of the Oracle Note and First DOT.

In addition to the First DOT, the Property acts as security for a $6,000,000 note originally extended by UCB to JG Orbis Corporation, an affiliate of the Debtor (JG Orbis Note). The deed of trust securing the JG Orbis Note (Second DOT) arose out of a 2009 forbearance agreement between the Debtor and UCB. The JG Orbis Note is also secured by certain property in Sonoma County, California. EWB alleges that the FDIC transferred the JG Orbis Note and Second DOT to it, and that it is now the holder of the JG Orbis Note and Second DOT.

Mubeen Aliniazee (Aliniazee) manages the Debtor. The Debtor's previous owner, Kun Sam Kim, engaged Aliniazee to negotiate a loan workout. When the workout failed, Mr. Kim transferred his interest in the Debtor to Underwater World, LLC (Underwater World), an entity formed by Rohit Tripathi to hold a 95% interest in the Debtor. At some point in 2010, Mr. Tripathi transferred his interest in Underwater World to MMA Investments, LLC, an entity formed by Aliniazee. As a result of that transfer, MMA Investments, wholly owned by Aliniazee, now owns Underwater World which owns

2

95% of the Debtor. Richard DeNezza, the general manager of the Property, owns the other 5% interest in the Debtor.

On April 9, 2010, the Debtor filed a voluntary Chapter 11 petition for relief. It has been operating as a debtor in possession under §§ 1107 & 1108[1]. On August 25, 2010, EWB filed a Motion for Relief from Stay (MRS), alleging that its interests under the Oracle Note, the JG Orbis Note, and the First and Second DOTs were not adequately protected, that the Debtor had no equity in the Property, and that the Property was not necessary for an effective reorganization. Additionally, EWB claimed that the Debtor, as a single asset real estate debtor, could not confirm a Plan without the consent of EWB, which would not be forthcoming.

The Stay Relief Motion included copies of the First DOT and Second DOT, executed in favor of UCB, but contained no assignment from UCB to EWB of either deed of trust. The Stay Relief Motion included language indicating that Exhibits 3 & 4 would be filed as a supplement. The contents of Exhibits 3 & 4 were not disclosed. Concurrently with the Stay Relief Motion, EWB filed a declaration of Steve Chang, a Senior Vice President of EWB (Chang Declaration). The Chang Declaration contained copies of the Oracle Note and JG Orbis Note, each executed in favor of UCB. No assignment of either note was attached to the Chang Declaration, but it included notations that Exhibits C & D would be filed as supplements. EWB did not supplement the MRS or the Chang Declaration to provide evidence of assignments to EWB until shortly before the combined hearing on confirmation of the Plan and the MRS.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

3

On December 3, 2010, the Debtor filed an amended plan of reorganization (Plan) and related disclosure statement (Disclosure Statement). The Plan proposes to pay holders of any priority tax claims in full, and holders of secured tax claims (Class 6) in monthly payments of $2,500, with a balloon payment upon the earlier of: (1) sale of the Property; or (2) the third anniversary of the Plan's effective date. Additionally, the Plan proposes to pay certain equipment claims (Equipment Claims) in full over time. Specifically, Class 3 of the Plan consists of: Class 3(a) – a $9,099.96 claim by Bank of the West to be paid over 10 months; Class 3(b) – a $5,833.90 claim by Pawnee Leasing Corporation to be paid over five months; and Class 3(c) – Zions Credit Corporations' $8,350.65 claim to be paid over seven months. Bank of the West and Pawnee Leasing's claims arose from leases of apartment furnishings, including loft bed, dressers and chairs. The Plan does not disclose the nature of the equipment leased from Zions Credit, and Zions Credit did not file a proof of claim.

The Disclosure Statement explains that the contracts giving rise to the Equipment Claims could be interpreted as leases or security agreements. Instead of litigating the issues, the Debtor proposes to pay the claims under the Plan as secured claims. EWB argues that these claims are not secured claims, but prepetition arrears due under the leases. As a result, EWB claims that the Equipment Claims should have been classified with other general unsecured claims.

The Plan divides EWB's claims into secured (Class 2) and unsecured portions (Class 4). The Plan provides for Class 2 to retain its lien up to the value of the Property, subject to the liens of secured tax claimants. The Plan provides for interest only payments on the Class 2 claim at prime plus 100 basis points, until sale of the Property,

4

Case 4:10-bk-10389-EWH   Doc 244   Filed 06/29/11   Entered 06/30/11 11:49:08   Desc
Main Document - Decision    Page 4 of 16

not later than three years after the Plan's effective date. Upon a sale of the Property, the Class 2 creditor will receive sale proceeds equal to the value of its secured claim, which the Debtor estimated at $991,094.00. EWB's deficiency claim is treated as a Class 4 general unsecured claim. Under the Plan, the Class 4 general unsecured claims would be paid a pro-rata share of 50% of the net sale proceeds from the sale of the Property, after satisfaction of the Class 2 claim.

The Plan proposes to pay the other 50% of any net sale proceeds to the Debtor's interest holders. Under the Plan, existing equity could receive an interest because of a new capital contribution of $150,000 being made by Underwater World. At the confirmation hearing, Aliniazee testified that the source of the money for the new capital was a Breakwater Equity Partners (Breakwater), an entity in which Aliniazee has an interest. Aliniazee's testified that Breakwater would not become an equity holder of Underwater World or of the Debtor, but that the Breakwater contribution was not a loan to the Debtor. The Plan also provides that certain administrative claims and postpetition operating shortfalls are to be paid for by equity as needed to maintain the Property.

Bank of the West Class 3(a) voted to reject the Plan, and EWB voted in both Class 2 and Class 4 to reject. EWB's rejection vote in Class 4 swamped the unsecured class and made it a rejecting class. Likewise, Bank of the West's rejection in Class 3(a) swamped Class 3.[2]

---

[2] The Debtor claims that Classes 3(a), 3(b) and 3(c) are actually three separate classes, and that the affirmative vote of Classes 3(b) and 3(c) provide at least one consenting impaired class required for confirmation. In addition, Class 6, the secured tax claim voted to accept the Plan. EWB argues that the secured tax claims may not be a consenting class and that the votes of Classes 3(b) and (c) cannot be separated from Class 3(a). Because the Court finds that the Plan cannot be confirmed, it does not reach the issue of whether there is an accepting class.

5

On January 31, 2011, EWB filed an objection Plan confirmation (the Objection), which argues that the Plan fails to meet the requirements for cramdown under § 1129(b). Specifically, EWB claims that the Plan is not fair and equitable because it proposes to permit existing equity to receive a distribution under the Plan in exchange for a contribution made by an unrelated party – Breakwater. According to EWB, in order to satisfy the new value exception to the absolute priority rule, the new value must be provided by old interest holders. EWB also claims that the amount of the new value is not substantial compared with Debtor's $15 million in unsecured debt, and that the $150,000 contribution is not reasonably equivalent to the value given to old interest holders. Furthermore, EWB claims that the Debtor has not shown that the capital infusion is necessary for a successful reorganization.

EWB cites several other deficiencies with the Plan, as follows:

(1) The Plan violates § 1129(b)(2)(A) because:

    a. The proposed interest rate is too low to confirm the Plan under 1129(b)(2)(A)(i); and

    b. Payment in three years of the same amount it was owed at confirmation would not provide EWB with the "indubitable equivalent" of its claim under § 1129(b)(2)(A)(iii);

(2) The Debtor does not have a consenting impaired class as required by § 1129(a)(10);

(3) The Debtor's Plan was proposed in bad faith in violation of § 1129(a)(3), as evidenced by the alleged artificial impairment of Class 3 claim;

6

(4) The Plan includes impermissible third party releases of officers, directors and estate professionals; and

(5) The Plan is not feasible, as required by § 1129(a)(7).

On February 3, 2011, EWB forwarded copies of several documents to the Debtor, including copies of: (1) an allonge assigning the Oracle Note from the FDIC to EWB, dated February 2, 2011 (Allonge); and (2) an assignment of the Second DOT from the FDIC to EWB, dated March 1, 2010 (Assignment). The Debtor objects to admission of these documents because they were not exchanged prior to the January 24, 2011 deadline imposed by the Court's evidentiary hearing scheduling order. If excluded, the Debtor contends that EWB cannot demonstrate that it has standing to pursue the MRS or vote on and object to the Plan.

On February 14 and March 18, 2011, the Court held evidentiary hearings on confirmation of the Plan and the MRS (Confirmation Hearings). At the Confirmation Hearings, both sides presented testimony regarding the value of the Property and the proper interest rate to provide EWB with a stream of present value payments as required by § 1129(b)(2). At the conclusion of the March 18 hearing, the Court found that the Property was worth $1,950,000 and the proper interest rate was 6.5%, but left unresolved EWB's § 1129 arguments and the Debtor's standing arguments. The Court asked the Debtor to notify the Court and EWB if it wished to proceed with the Plan based on its valuation and interest rate determinations. On April 1, 2011, the Debtor advised the Court it wished to proceed with confirmation. The Court asked the parties to file simultaneous post-hearing briefs on the remaining issues. The briefs were timely filed and the matter is ready for decision.

## III. ISSUES

(1) Does EWB have standing to object to confirmation of the Plan?

(2) Does the Plan meet the requirements of § 1129 for confirmation?

   if not,

(3) Does EWB have standing to obtain relief from the stay?

   and if so

(4) Is EWB entitled to relief from the stay?

## IV. JURISDICTIONAL STATEMENT

Confirmation and relief from stay proceedings constitute core proceedings under 28 U.S.C. § 157(b)(2)(G) & (L). This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. § 157(a).

## V. DISCUSSION

A. <u>EWB Has Standing to Object to Confirmation</u>

At the Confirmation Hearings, the Debtor questioned whether EWB had standing to object to the Plan. The Debtor argues that the Allonge provided to Debtor's counsel on February 2, 2011, should not be admitted into evidence because the Court's scheduling order directed all information to be exchanged by January 24, 2011. Without the Allonge, the Debtor claims that EWB cannot show it is the holder of the Oracle Note and, therefore, EWB lacks standing to object to confirmation. The Court, however, exercised its discretion at the Confirmation Hearings and admitted the Allonge into evidence.

8

In its post-hearing brief, EWB argues that the Debtor's inclusion of EWB on its schedules and EWB's proof of claim provides further evidence of its standing. This argument, however, was recently rejected in <u>Veal v. American Home Mortgage Servicing, Inc. (In re Veal)</u>, 2011 WL 2304200 (9th Cir. BAP 2011). In <u>Veal</u>, the Ninth Circuit BAP explained that standing is an independent inquiry that must be made in all federal litigation, and must be determined prior to consideration of the substantive rights of the parties. <u>Id</u>. at *13-14. In <u>Veal</u>, American Home Mortgage, Inc. (AHMI) filed a proof of claim in the Veals' bankruptcy. <u>Id</u>. at *1. The debtor objected to the proof of claim, arguing that AHMI was not the real party in interest, nor an agent for the real party in interest, and therefore lacked standing to file the proof of claim. <u>Id</u>. at *2. The bankruptcy court overruled the Veals' objection. <u>Id</u>. at *4. The BAP concluded that once the Veals had challenged AHMI's standing, AHMI had an affirmative obligation to show that it was a real party in interest, or that party's agent. <u>Id</u>. at *16. Because AHMI had provided no evidence at all on the issue, the BAP vacated the bankruptcy court's order and remanded. <u>Id</u>. at *16, 18.

In this case, EWB provided evidence that it was the holder of the Oracle Note prior to the Confirmation Hearings. The Allonge, although not exchanged prior to the deadline in the Court's scheduling order, appears to be a valid assignment of the Oracle Note. Further, EWB provided the testimony of Mr. Chang to authenticate the Allonge. Mr. Chang testified that the Allonge was signed on February 2, 2011. The Court admitted the Allonge into evidence, and along with the testimony of Mr. Chang, EWB has provided evidence to show that it was the proper holder of the Oracle Note at the time of the Confirmation Hearings.

9

To the extent the Debtor argues that EWB continues to lack standing because the Allonge was executed after EWB objected to the Plan, the Court concludes that the Allonge from the FDIC acted as a ratification permitting EWB to continue its objections to confirmation of the Plan. At the Confirmation Hearings, the Debtor admitted that it borrowed the $10,000,000 evidenced by the Oracle Note, and owed someone the money. When EWB filed the Objection, the Debtor owed the money to either the FDIC or EWB. Fed. R. Civ. P. 17(a)(3)[3] requires the Court to permit a party a reasonable time to cure prudential standing issues by obtaining a ratification. Dunmore v. U.S., 358 F.3d 1107, 1112 (9th Cir. 2004). A real party in interest may ratify the proceeding by: (1) authorizing continuation of the proceeding; and (2) agreeing to be bound by the lawsuit's results. Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707 (9th Cir. 1992). Here, the Allonge acted as a ratification by the FDIC of EWB's actions. The FDIC gave up its ability to pursue any claims it had by assigning the Oracle Note to EWB and permitting EWB to continue with its objection to the Plan and the MRS.

Even assuming EWB did not have standing to object to confirmation of the Plan, the Court has an independent duty to consider whether the Plan meets all of the confirmation requirements of § 1129. In re Ambanc La Mesa Ltd. P'ship, 115 F.3d 650, 653 (9th Cir. 1997). At the Confirmation Hearings, the Debtor admitted that it was liable to someone for the Oracle Note. As a result, someone's interests are being affected by the Court's confirmation decision. In order to ensure protection of the holder's interests,

---

[3] Made applicable to contested Confirmation Hearings and relief from stay proceedings by Rules 7017 and 9014.

10

the Court will independently consider if the Debtor has satisfied the requirements of § 1129.

B.  The Plan Cannot be Confirmed

As a prerequisite to plan confirmation, § 1129(a)(8) requires a debtor to obtain an affirmative vote from each class of creditors that is impaired under the plan. If at least one class of claims votes to reject the plan, the plan may still be confirmed if it meets the requirements for cramdown under § 1129(b). Section 1129(b) requires the debtor to show that the plan is fair and equitable with regard to each impaired class that voted to reject the plan. Section 1129(b)(2) codifies the so-called "absolute priority rule" and provides the minimum requirements for a plan to satisfy the fair and equitable requirement. In order to meet the fair and equitable requirement with respect to an objecting class of unsecured claims, § 1129(b)(2)(B) requires that the plan provide the class payment in full, or the plan must provide that any class of junior claims will not receive or retain property under the plan "on account of' such junior claims or interests.

In this case, two classes of claims have rejected the plan, including the general unsecured claims contained in Class 4. As a result, § 1129(b)(2)(B)(ii) prevents any class of claims or interests from receiving or retaining any property under the plan "on account of" their junior claims or interests. The Plan proposes to give old interest holders a 50% of any net sale proceeds from the Property. The Debtor argues this is permissible under the new value exception to the absolute priority rule.

The new value exception to the absolute priority rule permits old equity to receive an interest in the reorganized debtor in exchange for an infusion of new money. See In re Bonner Mall P'ship, 2 F.3d 899, 908-09 (9th Cir. 1993). Section 1129(b)(2) simply

11

prevents a recovery "on account of" the old interests. If old equity provides a cash infusion, the junior interests instead receive their interest in the reorganized debtor "on account of" their infusion of new money. Id. In Bonner Mall, the Ninth Circuit held that old equity may only receive an interest in the reorganized debtor if the new value provided is: (1) new; (2) substantial; (3) money or money's worth; (4) necessary for a successful reorganization; and (5) reasonably equivalent to the value or interest received. 2 F.3d at 908-09.

In this case, the proposed $150,000 contribution is not substantial. In Ambanc, 115 F.3d 650, the Ninth Circuit concluded that the *de minimis* new value contribution proposed by the debtor in that case failed the substantiality requirement of the new value exception. Id. at 655-56. In Ambanc, the debtor proposed to contribute $320,000 over time, although the Ninth Circuit concluded that only $32,000 counted toward the new value contribution[4]. Id. at 654. The Ninth Circuit recognized that substantiality of a new value contribution could be analyzed by comparison to: (1) the total unsecured claims in the case; (2) the claims being discharged; or (3) the dividend to be paid on unsecured claims by virtue of the contribution. Id. at 655. In the end, the Ninth Circuit concluded that it need not determine which test was correct, because the plan in Ambanc failed under all three. Id. at 655-66.

Like the plan in Ambanc, the $150,000 contribution in this case fails under each of the three tests. The $150,000 contribution amounts to approximately 1% of the unsecured claims in this case when EWB's nearly $14,000,000 deficiency claim is

---

[4] The rest would not be paid at the time of confirmation, but would be contributed in the future. Ambanc, 115F.3d at 655.

12

added to the rest of the unsecured claims. The Ambanc contribution was nearly the same, amounting to about .8% of the total unsecured claims in the case. Ambanc, 115 F.3d 655. Furthermore, 1% is substantially less than the percentage of unsecured debt that other courts have concluded is insubstantial. See In re Woodbrook Assocs., 19 F.3d 312, 320 (7th Cir. 1994) (3.8%); In re Snyder, 967 F.2d 1126, 1132 (7th Cir.1992) (2.2%); and In re Olson, 80 B.R. 935 (Bankr. C.D. Ill.1987) (1.56%), aff'd, No. 88-4052, 1989 WL 330439 (C.D. Ill. Feb. 8, 1989).

The $150,000 contribution also fails the substantiality test when compared with the dividend to be paid to unsecured creditors under the Plan. Like the plan in Ambanc, the Plan does not provide any information on the dividend to be paid to unsecured creditors. See Ambanc, 115 F.3d at 655. Perhaps it would be appropriate to consider the dividend the Debtor proposes to pay unsecured creditors from the net proceeds of the sale of the Property. However, the Debtor did not provide any information regarding the amount of such dividend. As a result, the Debtor failed to meet its burden of showing substantiality. See In re Tucson Self-Storage, Inc., 166 B.R. 892 (9th Cir. BAP 1994) (plan proponent has burden of showing that the plan meets all the new value requirements).

For the same reason, the Debtor failed to show substantiality when compared with the amount of unsecured debt to be discharged. The amount of unsecured debt is approximately $15,000,000. If the Debtor pays a substantial dividend upon sale of the Property, this amount could be reduced. But again, the Debtor did not provide any information regarding the expected return from the sale of the Property. Furthermore, a calculation of the amount of debt discharged would need to take into account the time

13

value of money, and the resulting increase in the amount of debt discharged over the life of the plan.  See Ambanc, 115 F.3d at 656 (lost interest would increase the debt discharged over the ten year life of the plan).  The Debtor has simply failed to meet its burden of showing that the proposed new value contribution meets the substantiality requirement of Bonner Mall.  As a result, the Plan cannot be confirmed.

        C.       <u>EWB Had Standing to Pursue the Stay Relief Motion</u>

The Debtor argues that EWB lacks standing to pursue the Stay Relief Motion because EWB failed to provide assignments of the Oracle Note or either the First or Second DOT prior to the deadline for exchanging information.  However, as discussed above, EWB provided a copy of the Allonge prior to the Confirmation Hearings, which were also scheduled as the evidentiary hearings on the MRS.  EWB called Mr. Chang as a witness to authenticate the Allonge, and he testified that the Allonge was executed on February 2, 2011.  This is sufficient to conclude that EWB had standing to object to the Plan prior to the Confirmation Hearings, and it is equally sufficient to conclude that EWB cured any standing problem related to the Stay Relief Motion prior to the Confirmation Hearings.[5]

---

[5] The Court does not, however, condone EWB's conduct in filing the MRS and the Chang Declaration with references to non-existent exhibits. It has been this Court's experience that lenders too often fail to provide the information required by Local Rule 4001-1(e). Although the Court has permitted EWB to pursue stay relief in this case, lenders' attorneys must remember they are required, under Rule 9011, to make a reasonable inquiry into the circumstances surrounding their pleadings and certify that the factual contentions in their pleadings have evidentiary support. Failure to comply with Rule 9011 may result to sanctions. Although it may be the lender who has not provided the required documentation, it is the attorney who must certify to the Court that the motion is supported by evidence, including the documentation required by Local Rule 4001-1(e). Until the attorney has the evidence, in hand, the motion should <u>not</u> be filed.

14

### D. EWB is Entitled to Relief from the Stay

Section 362(d)(2) permits a party in interest to seek relief from the stay if: (1) a debtor has no equity in the property; and (2) the property is not necessary for an effective reorganization. § 362(d)(2). The Court valued the Property at $1,950,000. In light of EWB's $10,000,000 claim, the Debtor clearly has no equity in the Property. Inherent in the second prong of § 362(d)(2) is the requirement that a reorganization be in prospect, with a reasonable possibility of a successful reorganization within a reasonable time. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375-76 (1988). In light of the denial of confirmation, the Debtor no longer has any plan in prospect, and the Court concludes that the Debtor has failed to carry its burden of showing that a successful reorganization is possible within a reasonable time. See § 362(g)(2) (burden of proof on the party opposing relief from stay as to all issues other than the debtor's lack of equity).

## VI. CONCLUSION

The Court concludes that EWB had standing to object to confirmation of the Plan and pursue the MRS. EWB's objections to the Plan raised several questions regarding whether the Plan could be confirmed under § 1129. However, because the Plan failed to meet the substantiality requirement of the new value exception to the absolute priority rule, the Court need not reach all of the other issues raised by EWB. Separate orders will be entered this date denying confirmation of the Plan and granting EWB stay relief.

Dated and signed above.

15

Notice to be sent through the
Bankruptcy Noticing Center "BNC"
to the following:

Oracle Innkeeper LLC
3001 E Camelback Road, #140
Phoenix, AZ 85016
*Debtor*

Shelton Freeman
Deconcini McDonald Yetwin & Lacy PC
6909 East Main St.
Scottsdale, AZ 85251
*Counsel for Debtor*

East West Bank
c/o Kevin Hahn, Malcolm Cisneros
2112 Business Center Dr, 2nd Floor
Irvine, CA 92612
*Counsel for East West Bank*

Office of the U.S. Trustee
230 North First Ave., Suite 204
Phoenix, AZ 85003

16